Next case will be U.S. v. Young, 23-609-4. Okay, the next case is U.S. v. Young, and we'll hear from Ms. Deskin. May it please the Court, my name is Laura Deskin on behalf of Mr. Jamario Young. In this case, Mr. Jones objected to being held accountable via relevant conduct for fentanyl amounts tied to pills found in a lunchbox in his bedroom closet. In response to that objection, the government proceeded without a witness, but chose to rely upon unsworn documents that included an incident report and an unsworn probable cause affidavit in addition to photographs. And so the question here is, was that enough? We also have a preservation issue that I acknowledge, and I wanted to deal with that up front. The objection was he didn't know about the pills, the lunchbox wasn't his. That was the argument that defense counsel was making below. Yeah, he had nothing to do with the fentanyl that had been described. Correct. I think he consistently referred to the drugs or the pills, and so did the court. I'm scouring the record here because I was looking for, is there evidence that these M30 pills that are repeatedly described were actually fentanyl? Well, no. It was obviously 30 milligrams of OxyContin that had been allegedly laced with fentanyl, just like the M30 that had been laced with fentanyl that had already been found and tested. Correct. So these were different times at different dates, and I acknowledge that that's an issue. What happened here was, so in paragraph 20 of the PSR, that's exactly where it describes what was found, the relevant conduct here, and it only describes M30 pills being found. It doesn't say M30 which were laced with fentanyl. No, the probable cause affidavit does that. The probable cause affidavit states that these pills were marked M30 and FTP fentanyl, but it doesn't describe any further. I mean, whether the pills themselves were actually stated on the pills that they contained fentanyl, were they in bags that contained fentanyl, and then you have an incident report that states nothing about fentanyl, only describes M30. We didn't have a witness here to state anything like M30 is commonly laced with fentanyl, or we didn't even have a field testing of these pills. Can I ask you just a practical question? So, I mean, we are presumably on plain error, but you can set us straight on that. But assuming we are here on plain error, the defendant's counsel says, we didn't have anything to do, we didn't know about this fentanyl, and so Judge Friant is determining the quantity of the fentanyl, and as you point out candidly in your opening brief, everybody, including defense counsel, presumably including Judge Friant, assumed that there was no question about fentanyl. So of course there's not going to be any field testing of the drugs on the shelf to say, okay, well this is lab tested or field tested for fentanyl. Nobody was questioning it. The defense counsel appeared to be acknowledging it. So isn't it a little counterintuitive, it defies her common sense to say, okay, well on plain error, there was absolutely no evidence to support this factual finding on an issue that not only had gone under the radar, as you put it, I think, but that everybody acknowledged it was fentanyl, including defense counsel. I think defense counsel acknowledged that they were drugs in his objection that was listed in the PSR written at the end. It does say fentanyl in there, but he's not acknowledging that they're fentanyl. I think that in that case, they're alleged to be fentanyl, and so he's just going with that description, but he's also saying, well, my client doesn't know anything about these. So I think subsumed within stating, those aren't mine, I don't know anything about them, is the idea that, I mean, I don't know what's in that box. So, I mean, I do acknowledge, yes, he did not say to the judge, in addition to arguing that I didn't know about these pills, I argued that those pills weren't fentanyl and you need to prove it. That did not happen here, and I acknowledge that. Yeah, I mean, it's pretty close here, it's almost to invited error on the transcript where, sentencing transcript, where the judge says, the two incidents that ultimately the judge found there was possession on. This brings us to a little over 600 grounds, loosely speaking, we're at 633, everybody seemed to understand we're talking about fentanyl. Mrs. Connelly says, yes, your honor, the court says, and does the defendant concur? And defense counsel says, yes, your honor, I have 634.28 grams. He's referring to fentanyl. Yeah, he's referring to the amounts that were calculated there, and there wasn't a discussion, are we talking about fentanyl or not. So, if we're here on plain error, I would just state that we have, in this case, the district court stating that he has sufficient indicia of reliability with respect to the facts set forth in Government Exhibits 2 and 3, augmented by photographic exhibits, sufficient to enable me to confidently say, yes, the defendant possessed the fentanyl that's described in Exhibits 2. And there is no fentanyl described in Exhibits 2 and 3. Well, he's just mimicking the defense counsel's exact language. That's exactly what the defense counsel referred to it as, the fentanyl that had been described, right? So, described is just parodying defense counsel. That's correct. Okay. I mean, I have to acknowledge that. Okay. That's just exactly what happened. Okay. I think my ultimate problem here is that, yes, everyone in this case was discussing M30, and nowhere is there proof that this M30 was fentanyl. There's an unscored probable cause affidavit that states it, but without any other information and without any support from the actual incident report. That doesn't state anything about fentanyl, nor was it field tested. Well, counsel, can I ask about the pre-sentence report? You mentioned Paragraph 20, but two paragraphs above that in Paragraph 18, it's a subhead, and it says, Possession of fentanyl, Cleveland County, Oklahoma City. As you mentioned, defense counsel made objections to the pre-sentence report, but not to that paragraph, in terms of, again, what the substance was. So when the parties got together for the sentencing hearing and the judge was contemplating those objections for purposes of making findings and guideline calculations, under Rule 32, of course, the judge can rely upon any undisputed facts. Why doesn't the fact that Mr. Young did not object to Paragraph 18 perhaps, again, answer the bell as to what the court could rely upon to make that finding a fact that these pills were in fact fentanyl? I guess because that was just a heading paragraph, as I recall, and the actual substance where it's talking about what was found merely says M30. And even in the paragraph where they're adding up the amounts, it only refers to M30, not fentanyl. And that's the paragraph that he objected to. And if you don't have any further questions, I will cede the rest of my time. Well, we do have questions, but Robert, let's stop our clock at six minutes. But I do want to ask you just about the standard. Let's say, assume for purposes of my question that we do apply plain error. Now, I think you acknowledge, at least I think it's pretty clearly the law, that not only, I mean, you have an argument about de novo review for relevant conduct, but subsidiary factual findings that go into the determination of relevant conduct, I think, for factual questions, are clearly subjected to the clear error standard if preserved, right? I think so. So my question is, so what happens if a defendant fails to preserve an objection to a factual challenge? Does the clear error standard disappear, or does the prong two of plain error, the obviousness prong, is that, in effect, requiring us to say, was it obvious that the district court committed clear error? Is that ultimately, on plain error, how we would apply prong two on a subsidiary factual issue? I think that's correct. When I was researching this, I was tangling with these same issues as to how to apply this. But I think that, yes, here the district court made a finding that there was sufficient indicia of reliability within these documents, and so then is that, and that was an issue that just the trial counsel didn't specifically object to that, but it was a finding that was made, and clearly on the record, and this court can, because there was no witness, because there's no, it's not like a credibility issue where you have a witness that only the district court, you know, people that were there saw it, to where you give credence to what the trial court determined there. Here we have plain, you're looking at everything that the district court had to go on, that clear error then can be the standard. Okay, on this probable cause affidavit, let's say it had said, during the course of the search, approximately 4,000 blue pills marked FTP fentanyl were discovered inside a lunchbox. Would that have been an obviously clear error to find that those 400 pills contained traceable quantities of fentanyl? Yes. Even if, why would it have been obvious if there's an unsworn document that specifically identifies, that is the affidavit that is submitted, presumably in support of a warrant, that specifically identifies this substance as fentanyl? Because that particular document was only a probable cause affidavit, and it was unsworn and unsigned. It was only two paragraphs, and then you have the report that would have been relied upon to create this probable cause affidavit, nothing that mentions fentanyl whatsoever. Well, it mentions the 30 milligram Oxycontin, but he had already been found with these blue pills that were 30 milligram Oxycontin, that it also contained fentanyl. I mean, obviously there's a lot of 30 milligram Oxycontin that is laced with fentanyl. We know that because he was found with it in Albuquerque, I think. Well, we don't know the degree on this record to M30s and whether or not they contain fentanyl all the time. We have that there's the Albuquerque incident, but the court found that the reports that were provided there were not reliable. And so he did not find that he was held accountable for that. But Judge Friant didn't say, oh, but I don't think that that 30 milligram Oxycontin didn't contain fentanyl. He just said he thought that the woman was accountable for it, not him, right? Right, sure. Okay, but there was no question that that 30 milligram Oxycontin. Well, you know, he didn't actually go so far as to say that. He just acknowledged these were unreliable documents, and so he wasn't going to go with whatever they said. Okay, last question, and then I'll quit bothering you. Is there a precedent? Is there a tense case, published or unpublished, a Supreme Court case that says that an unsworn probable cause affidavit cannot be used as adequate support for a factual finding for the contents therein? No, there's not one. I think that in this case, these particular documents weren't enough. Isn't that a problem, because don't we have a lot of cases that say it's only obvious if there's a precedent that would dictate a contrary result? Well, this is so factually based, I think that based on the record, you can look at it and see that they don't have sufficient and decent reliability. Okay. Okay, thank you. Thank you. Ms. Bagwell? Good morning, Your Honors, and may it please the Court. My name is Elizabeth Bagwell. I'm arguing on behalf of the United States. This Court should find that the District Court committed no error in including the approximately 4,000 fentanyl pills from the defendant's residence as relevant conduct when sentencing the appellant, Mr. Young. This case begins and ends with the fact that not only did Mr. Young never specifically object that the pills were fentanyl, but he affirmatively referred to them as fentanyl in his PSR objection, and then repeatedly referred to them as these specific drugs or drugs when the only drug at issue at the sentencing hearing was fentanyl. I thought he referred to the drugs described as fentanyl. Your Honor, I believe that the pre-sentencing hearing was fentanyl. The pre-sentencing report in the objection on page 29 refers to the drugs as Mr. Young disputes possessing the fentanyl pills described in these paragraphs. It's not as described as fentanyl. He disputes possessing fentanyl pills that have been described in this paragraph. It's a semantic issue, but I think it's clear that at the time that these objections were made, the defendant was not objecting that the pills found were, in fact, fentanyl. And I would note that that is not subsumed, that factual inquiry as to whether the fentanyl pills were, in fact, fentanyl, into his objection of his knowledge. Those are two separate issues completely unrelated to one another. If the pills in the box had not been fentanyl and he'd said, oh, I knew they were fentanyl, the government would still have had to prove that those pills were fentanyl if he had objected to it. Are you arguing waiver or forfeiture? I would say waiver, Your Honor. However, we ultimately get to the same place, but I do believe there was an intentional abandonment of a known right, Your Honor. I believe that by affirmatively referring to these pills as fentanyl, he waived the right to contest that they were fentanyl later. By stating at sentencing, we are not objecting to these specific drugs. What we're objecting to is Mr. Young's involvement with them, that he should not be held accountable for them because there was another person in the house. However, even if we go with forfeiture, under a plain error standard, we get to the same place. This circuit's case law is extremely clear that the failure to object to a type of drug is a factual failure that invokes plain error. That when you're under plain error, in order for there to be any error, there must be deviation from a legal rule. We have two legal rules here. One, the Federal Rule Criminal Procedure 32 that says any undisputed portion of the pre-sentence report can be accepted, and we have the judge accepting it in his statement of reasons. We also have hooks from 2008, which states that failure to object to a specific fact deems the fact admitted by the defense, and the government is not required to put on any further evidence to prove that fact. What was there in the pre-sentence report that said it was affirmatively fentanyl? Your Honor, the pre-sentence report refers to those pills in the first paragraph as M30 pills. That's true. However, when it calculates the total calculation for the grams, it refers to the – it says they're holding him accountable for, at that time, before the objection was sustained as to the previous incident, 1,279 grams of fentanyl. They're using the fentanyl drug calculation table. Additionally – Can you point me to where the pre-sentence report says that? Yes, Your Honor. That would be on page 14, I believe. Or, I apologize, page 8. It's paragraph 24. However, for guideline purposes, the defendant will be held accountable for the amount of fentanyl pills seized in each incident for a total of 1,232 grams, or 34.28 grams. Additionally, within the probable cause reports that we do have admitted into the record, those pills are referred to as FTP, fentanyl, and M30 pills. We also have the previous affidavit that refers to the pills as M30, which later tested positive for fentanyl, and we have his – Not the same drugs. The ones in Albuquerque. The ones in Albuquerque, Your Honor. Could you refer – could you address your adversary's argument about the probable cause of the affidavit? As to the reliability of the two that were admitted? Yeah. Well, that the pills were marked M30 and FTP, fentanyl. Your Honor – And that that was unreliable, it wasn't signed? Your Honor, I do not believe that the police reports were unreliable. I will note it's unclear from them if the pills were marked M30 or the pills were marked M30 and FTP, fentanyl. However, we do have the pictures corroborating that these small blue pills were in this house, which they reported, that the bags at least were marked FTP, fentanyl. And we have the fact that there's corroborated the two reports, while the judge – and I'll be clear on this – did not make a reliability assessment as to whether the reports were sufficient for fentanyl because there was no notice given that he needed to or that the government needed to produce evidence. And I'll touch more on notice in a minute. He did make a reliability assessment as to whether these two reports were internally consistent, and he found that they were. He made an individualized, on-the-record assessment of the reliability of the reports as a whole, which, while it doesn't touch on the preservation of specific facts, it does show that there was enough evidence in the record to support this finding. Under plain error, in order for a factual dispute to constitute error, the facts in the record have to be wildly contradictory or implausible with relation to the finding that was made. So even if the court had made a finding that there was fentanyl based solely on this record, that's certainly not implausible or contradictory to the facts that we have in evidence. And the defendant doesn't claim it is. In fact, the appellant claims that we didn't have enough evidence, not that our evidence that these pills might be fentanyl was contradictory to the finding of fentanyl. Now, and again, I'll go back to the fact that the reason that we require defendants to make specific factual objections is to put both the government and the court on notice of what is required to be proven. The court is allowed to accept undisputed sections of the PSR and undisputed facts as fact at the sentencing hearing. Hooks says that any facts not specifically objected to are deemed admitted. So the appellant comes here today and asks you to find that there wasn't sufficient evidence in the record that these pills were fentanyl when this is the first notice that the government or the court has been given that that was even a question. That's, you know, in terms of equity, fairness, if we're talking about fairness particularly to Judge Friant, I bet you both of you would agree that reversal would be completely unfair to Judge Friant who wasn't presented with any of these arguments. I don't want to put words in your mouth. But your argument I just don't follow in terms of Rule 30, or Rule 32. The pre-sentence report does not say anything that would have alerted Judge Friant to the fact that I, Judge Friant, have to find that there is something in the pre-sentence report that is not true. That the defendant has objected to. The defendant objected to the fact that this quantity of the fentanyl described in the affidavit, or however the language is, was attributable to him. That's what he addressed. Yes, Your Honor. And he addressed the fact that there was this guy Wilkerson in the house, but the house is his, etc. So he is understandably laser focused on whether the defendant, Young, has completely dominion and control over this bedroom of this shelf. But there is nothing that would have alerted him to the fact that I, Judge Friant, have to decide whether or not this objection ties into the content of the fentanyl. So there's nothing in the pre-sentence report that would have flagged to Judge Friant that he had to resolve an objection to the pre-sentence report. That's what it seems to me. I completely agree, Your Honor. So you would not say that the waiver of anything in the pre-sentence report would have constituted a waiver of an objection. We're back to forfeiture. No, Your Honor. I do think under the waiver doctrine, the known relinquishment, I think that the defendant stating, we object to these fentanyl pills, his possession of them specifically, not that they were fentanyl, that constitutes a waiver. And was that statement in the pre-sentence report or in argument? The statement referring specifically to fentanyl was in the pre-sentence report objections. The statement at argument, I think the most relevant one in this context is that they specifically note, we are not disputing, and this was not, to the best of my memory, prompted by a question. This is within the defense's opening argument. We are not disputing that there were these drugs in the residence. What we're disputing is that Mr. Young was not involved, did not have an agreement with, or wasn't otherwise associated with this visitor who had been there temporarily. And you would agree that that is classic forfeiture? I would say that's waiver, Your Honor, but if not, it is certainly classic forfeiture. And I believe under forfeiture, there's really no question that the judicial court made no error by applying the well-established legal rule that the failure to object to a specific fact deems the fact admitted, and that the district court can use all admitted facts and all undisputed portions of the PSR. If there are no further questions, I accede the rest of my time. Thank you. So I would just argue that by trial counsel stating that we're not disputing these drugs, I would concede that he conceded that these were M30 pills. M30. But not that those M30 pills were necessarily fentanyl. I admit this was not the subject of discussion during this sentencing. I mean, that's just clear. It is what it is. But that it was the court's responsibility to find by a preponderance of the evidence that he should be held attributable for these specific drugs, that was an objection. And everybody, including counsel clearly, was accepting the idea that M30 equals fentanyl. But nowhere in the record is that clear as to why M30 is suddenly fentanyl. What about the photos of the bags of pills that are marked FTP? They're not marked FTP. I thought that's what counsel said. Yeah, they weren't. I mean, we see the photos. If they were, you can't see them from the photographs. They're marked M30, right? You can't tell that from the photographs either. All you see are blue pills. But the incident report says M30 pills. I can't remember right now if it says marked M30 or if it just says M30. And then the probable cause affidavit says marked M30 and FTP fentanyl. I don't know where they're getting that from, if that means the pills or the bags or both, or if some are marked one or the other. Why should an ambiguity cut in your favor if we're on plain error as to whether or not there was clear error? I mean, you have sort of a double whammy. I mean, I will admit it is a tough argument. I mean, I'm there, I understand. But the problem is, is that you don't have, it's not like your typical case where you have methamphetamine or cocaine or things that are, objectively are what they usually have. Field testing or you can tell that it is the drug in some way. But here you don't have that. You just have these blue pills that, why are these necessarily fentanyl? Well, one reason is they look exactly like the pills that were in the, when they were traveling from Albuquerque. But are they? We don't have that testimony on the record. We have blue pills. Are they the same size? Are they the same weight? Were they packaged the same way? I don't know because there was no witness. Yeah. Okay. Very good. Okay. Thank you very much. This matter is submitted. I thought the arguments, again, were excellent in your briefs and your advocacy today. It's a super interesting issue and you all made it particularly hard for us, which is your job.